**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Katherine Vallera, | |
| Plaintiff, | No. 1:24-CV-04378 |
| v. | Judge Edmond E. Chang |
| Rush Oak Park Hospital, Inc., St. Anthony Hospital, Adam Spurlock, DNP, Jacob Moore, MD, Lyudmila Piasecki, RN, Majed Dalloul, MD, Tiffany L. Dean, LSW, Dr. Bikram Sharma, Ankitaben Han, MD, Meredith Castaneda, RN, Ralph Menezes, MD, and John Does 1-100, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Katherine Vallera alleges that she was involuntarily confined and sexually assaulted at a mental-health treatment facility because a series of medical providers impermissibly discriminated against her on the basis of her disability.[1] R. 72, Second Am. Compl. ¶ 1.[2] She seeks to hold responsible two groups of defendants: (1) Rush Oak Park Hospital (where she was originally admitted) and several of that hospital's employees; and (2) St. Anthony Hospital (where she was later transferred) and

---

[1]The Court has federal-question jurisdiction over Vallera's claims under the Americans with Disabilities Act and the Rehabilitation Act. Second Am. Compl. ¶¶ 117–39; 28 U.S.C. § 1331. As explained later, some of Vallera's federal theories of liability survive the Defendants' dismissal motions, so the Court also has supplemental jurisdiction over Vallera's theories under state law. Second Am. Compl. ¶¶ 140–86; 28 U.S.C. § 1367(a).

[2]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

several of that hospital's employees. *Id.* ¶¶ 4–16, 24, 52. The Defendants contend that several of Vallera's theories of liability must be dismissed because she has failed to state a claim for relief. R. 77, Rush Oak Park Defs.' Mot.; R. 78, St. Anthony Defs.' Mot.; R. 104, Def. Menezes's Mot. For the following reasons, the Court grants in part and denies in part the motions.

## I. Background

For purposes of this Opinion, the Court assumes familiarity with the underlying facts as recounted in the resolution of the Defendants' first set of motions to dismiss. *Vallera v. Rush Oak Park Hosp., Inc.*, 2025 WL 2734473, at *1–2 (N.D. Ill. Sep. 25, 2025). Vallera's factual allegations are almost entirely unchanged. *Compare* Second Am. Compl. ¶¶ 23–34, 37–107, *with* R. 12, First Am. Compl. ¶¶ 18–100.

In the earlier decision, the Court dismissed without prejudice Vallera's first amended complaint. *Vallera*, 2025 WL 2734473, at *3. Vallera alleged only one federal theory of liability on which supplemental jurisdiction over her state law claims relied. *Id.* And because Vallera failed to state a claim under that federal theory, the Court permitted her an opportunity to amend her complaint to cure any issues on that theory or to add any other federal theories of liability. *Id.*

Vallera now pleads two theories of federal liability: one for injunctive relief under Title III of the ADA, Second Am. Compl. ¶¶ 117–27; and one for damages under the Rehabilitation Act, *id.* ¶¶ 128–39. She brings the same set of state law claims relating to her involuntary confinement and alleged sexual assaults. *Id.* ¶¶ 140–86.

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).[3] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)). At the same time, the Supreme Court instructs that "[d]etermining whether a complaint states a plausible claim for relief will … be a context-specific task." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The Seventh Circuit has drawn a context-dependent distinction between relatively straightforward employment discrimination claims versus more complex claims. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404–05 (7th Cir. 2010).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible

---

[3]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

on its face." *Iqbal*, 556 U.S. at 678 (cleaned up). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

### III. Analysis

### A. Injunctive Relief Under the ADA

The Defendants first contend that Vallera cannot obtain injunctive relief because, as a threshold matter, it is not clear when, if ever, Vallera will be treated again at either hospital. Rush Oak Park Defs.' Mot. at 4–6; R. 78-1, St. Anthony Defs.' Br. at 9–11.[4] Vallera argues that she has alleged enough to survive the pleading stage because she remains disabled, now also suffers from post-traumatic stress disorder, and has other medical conditions that could require treatment at hospitals. R. 96, Pl.'s Am. Resp. at 14–16; Second Am. Compl. ¶¶ 113–16.

On the claim for injunctive relief, Vallera's factual allegations again fall short. In order for the Court to have jurisdiction over the claim for injunctive relief, Vallera must allege a "threat of injury" that is "both real and immediate, not conjectural or hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983) (cleaned up). Although Vallera cites to some fact-bound factors that might inform the need for

---

[4]Because Dr. Ralph Menezes was served and appeared later, *see* R. 79, 11/25/25 Minute Entry; R. 90, 01/09/26 Minute Entry; R. 101, 02/04/26 Minute Entry, he filed a separate motion to dismiss, R. 104, Def. Menezes's Mot. For the most part, he adopts the other Defendants' arguments, *id.* at 1–2, so the Court will refer either generally to all Defendants or to the Defendants based on their hospital affiliations.

injunctive relief in a case like this—such as whether there is an established provider-patient relationship and the proximity of the specific facility to the plaintiff's home, Pl.'s Am. Resp. at 15–16 (citing *Marquez v. Riveredge Hosp., Inc.*, 2022 WL 832650, at *3–4 (N.D. Ill. Mar. 21, 2022))—Vallera herself fails to plead any facts of that kind. At most, Vallera identifies a series of conditions that may make necessary mental-health and medical care at *some* facility, Second Am. Compl. ¶¶ 114–16, but she does not allege any facts in her Second Amended Complaint about the likelihood of care at any specific facility, let alone Rush Oak Park or St. Anthony in particular.[5]

The Court previously alerted Vallera to the need "to allege a sufficient likelihood that she will again be wronged in a similar way." *Vallera*, 2025 WL 2734473, at *3 (cleaned up). So her failure to allege adequate facts again means that the dismissal of her claim for injunctive relief is now final.

## B. Damages Under the Rehabilitation Act

Vallera also seeks damages for the alleged disability discrimination that she suffered. Second Am. Compl. ¶¶ 128–39. The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability … shall, solely by reason of her or his disability, … be subjected to discrimination under any program or activity receiving

---

[5]Vallera also argues that Rush Oak Park is one hospital in a larger network of facilities in the Chicagoland area. Pl.'s Am. Resp. at 15. But this could not support her claim for injunctive relief for the same reason: Vallera still has not pleaded any facts showing that care at *any* specific Rush-affiliated facility is likely. *Marquez*, 2022 WL 832650, at *3–4; *cf. Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1074–75 (7th Cir. 2013) (holding that plaintiff must show likelihood of returning to each affiliate location). And more fundamentally, Vallera could not obtain an injunction against the "large hospital system" that is Rush Oak Park's "parent company," Pl.'s Am. Resp. at 15, because that entity is not a defendant in this action. *See* Fed. R. Civ. P. 65(d)(2).

Federal financial assistance." 29 U.S.C. § 794(a). So to obtain damages under the Act, Vallera must allege that (1) she is "a handicapped individual as defined by the Act"; (2) she is "otherwise qualified for participation in the program"; (3) the program receives federal financial assistance; and (4) her disability was the sole reason she was denied benefits of the program. *Royan v. Chi. State Univ.*, 145 F.4th 687, 689 (7th Cir. 2025) (cleaned up).

The two sets of Defendants present both overlapping and different arguments in targeting the claim. The St. Anthony Defendants argue that Vallera has not alleged that she was "otherwise qualified" or that she was discriminated against solely by reason of her disability. St. Anthony Defs.' Br. at 5–9. The Rush Oak Park Defendants make similar arguments and also contend that Vallera fails to allege that the hospital receives any federal funding. Rush Oak Park Defs.' Mot. at 8–11. The Court agrees with the Rush Oak Park Defendants and dismisses without prejudice Vallera's claim against them under the Rehabilitation Act, but Vallera's factual allegations as to the events at St. Anthony suffice to state a claim for damages under the Act.

On the first contested element—whether Vallera is "otherwise qualified"—the Defendants initially argue that Vallera does not explain beyond mere conclusory statements what alternative treatment she was "otherwise qualified" for. *See* St. Anthony Defs.' Br. at 6; R. 99, St. Anthony Defs.' Reply at 4; R. 98, Rush Oak Park Defs.' Reply at 9. Although Vallera could have been more specific, she does articulate generally that she was otherwise qualified for less-restrictive treatment that did not involve involuntary confinement. Second Am. Compl. ¶ 130. And the Defendants do not

otherwise dispute Vallera's claim that she is otherwise qualified for, and entitled to, "the proper provision of medical and hospital services." *Id.* ¶ 138; *cf. Bowen v. Am. Hosp. Ass'n,* 476 U.S. 610, 624 (1986) (citing *Alexander v. Choate,* 469 U.S. 287, 301 (1985) and recognizing entitlement to "'meaningful access' to medical services provided by hospitals").

On the same element, the Defendants also contend that the Rehabilitation Act's requirement that a person be "otherwise qualified" generally excludes claims of medical treatment from the Act's ambit. Rush Oak Park Defs.' Mot. at 10–11. But the Defendants develop the argument only to the extent that they state that "courts are wary to apply [the Rehabilitation Act] to medical treatment decisions." *Id.* at 10; *see also* St. Anthony Defs.' Br. at 6–7. But wariness as the general rule does not foreclose exceptions. Indeed, the Seventh Circuit acknowledged that claims for disability discrimination in the medical context can arise under the Rehabilitation Act in narrow circumstances. *See Reed v. Columbia St. Mary's Hosp.,* 915 F.3d 473, 486 n.6 (7th Cir. 2019) (*Reed II*) (citing *McGugan v. Aldana-Bernier,* 752 F.3d 224, 231–32 (2d Cir. 2014)).[6]

---

[6]The Defendants only briefly develop a more detailed argument about the phrase "otherwise qualified": the tension presented when someone might qualify for a service on the basis of the same disability for which discrimination is alleged. *See* Rush Oak Park Defs.' Mot. at 10–11; *see also Grzan v. Charter Hosp. of Nw. Ind.,* 104 F.3d 116, 120–21 (7th Cir. 1997), *abrogated on other grounds by Olmstead v. L.C. ex rel. Zimring,* 527 U.S. 581 (1999). The cursory nature of this theory means the Defendants have waived the argument. *Puffer v. Allstate Ins. Co.,* 675 F.3d 709, 718 (7th Cir. 2012). But in any event, as the Court explains next, Vallera plausibly alleges that she otherwise qualified for mental-health treatment based on her actual disabilities yet was discriminated against based on her falsely perceived disabilities, so tension does not necessarily exist, at least as to the St. Anthony Defendants.

Recognizing this, the Defendants focus on whether Vallera actually asserts disability discrimination, which runs to the fourth element of a claim under the Act. In the Defendants' view, Vallera merely makes "criticisms of medical care." St. Anthony Defs.' Br. at 9; *see also id.* at 6–9; St. Anthony Defs.' Reply at 7–10; Rush Oak Park Defs.' Mot. at 10–11; Rush Oak Park Defs.' Reply at 3–8. It is true that there is a difference between medical malpractice and disability discrimination, and that only the latter is actionable under the Act. The relevant distinction is whether the discrimination alleged is "benign"—such as when "a health care provider making a discriminating professional judgment about the type of treatment to provide a patient"— or "pejorative," meaning the discrimination was "based on irrelevant criteria under the influence of irrational bias." *Reed II*, 915 F.3d at 486 n.6. And under the Rehabilitation Act, the pejorative discrimination can be on the basis of an actual or perceived disability. *Bowers v. Dart*, 1 F.4th 513, 519–20 (7th Cir. 2021).

At the pleading stage, Vallera has not met her burden as to Rush Oak Park. Vallera fails to plead any facts that could allow even an inference that the hospital took any actions based on her actual or perceived disabilities. At most, Vallera alleges that the entire series of events began when she arrived for a sleep study and reported experiencing anxiety. Second Am. Compl. ¶¶ 24–26. But she does not allege that any of the actions taken by staff at Rush Oak Park were motivated "solely by reason of" her anxiety, or that staff even knew about or perceived any disabilities, much less

8

that they acted improperly on that knowledge.[7] *See Royan*, 145 F.4th at 692–93. So Vallera has not met her burden of plausibly pleading disability discrimination as to Rush Oak Park.

The story is different for St. Anthony. Vallera alleges that St. Anthony falsely regarded her as having a series of mental-health conditions, Second Am. Compl. ¶¶ 55–69, and she alleges that staff at St. Anthony took medically improper actions solely because of "incorrect presumptions about her condition based on her disability or perceived disability," *id.* ¶¶ 99, 133–37. That is all that is needed at the pleading stage to "permit an inference of intentional discrimination." *Reed v. Columbia St. Mary's Hosp.*, 782 F.3d 331, 337 (7th Cir. 2015) (*Reed I*); *see also McGugan*, 752 F.3d at 231 ("[A] doctor who inflicts or withholds a type of medical treatment for reasons having no relevance to medical appropriateness … is practicing the pejorative form of discrimination."). It may very well be that staff at St. Anthony lawfully treated her based on her mental-health condition[8] or that pejorative discrimination was not the *sole* reason for her mistreatment. But those are factual issues incapable of resolution at this stage when Vallera is entitled to reasonable inferences. *See Iqbal*, 556 U.S. at 678.

---

[7]Vallera does state at one point that Rush Oak Park falsely documented Vallera as having bipolar disorder. Second Am. Compl. ¶ 133. But based on Vallera's factual allegations, it appears that this condition was erroneously noted by St. Anthony, not Rush Oak Park. *See id.* ¶ 58. In any event, Vallera may clarify if she amends her complaint.

[8]To be sure, the Defendants are right that allegations of falsely perceived disabilities alone would not amount to disability discrimination and instead would be misdiagnoses. *See, e.g.*, St. Anthony Defs.' Reply at 9–10. But Vallera's allegations are different, so her claims survive at least for now.

As explained earlier, Vallera failed to allege sufficient facts to infer disability discrimination by the Rush Oak Park Defendants. But because the dismissal of this claim will be without prejudice to the filing of a third amended complaint, the Court notes another issue that Vallera must address. The Rush Oak Park Defendants argue that Vallera alleges only that Rush University Medical Center, but not Rush Oak Park, receives federal funding. Rush Oak Park Defs.' Mot. at 9–10. The Court agrees that this failure under the third element is an independent basis for dismissing Vallera's claim under the Rehabilitation Act. The Act clarifies that federally funded programs or activities are "all of the operations of … an entire corporation." 29 U.S.C. § 794(b)(3). Vallera's own allegations acknowledge that Rush Oak Park and Rush University Medical Center are distinct corporate entities, and she alleges only that the latter directly receives federal funds. Second Am. Compl. ¶¶ 108–11. That is not enough. *U.S. Dep't of Transp. v. Paralyzed Veterans of Am.*, 477 U.S. 597, 605–06 (1986) (limiting Act's coverage to intended, and not "indirect," recipients).[9]

Finally, the Defendants suggest that Vallera's theory under the Rehabilitation Act is barred by the statute of limitations. Rush Oak Park Defs.' Mot. at 11; St. Anthony Defs.' Br. at 12–13. Not so. The parties agree that Illinois's two-year limitations period applies to claims under the Rehabilitation Act, *Bush v. Commonwealth Edison*

---

[9]For the sake of completeness, the Court notes that *Paralyzed Veterans* predated the change to the scope of the phrase "program or activity" under the Act. *T.S. ex rel. T.M.S. v. Heart of CarDon, LLC*, 43 F.4th 737, 744–46 (7th Cir. 2022); *Schroeder v. City of Chicago*, 927 F.2d 957, 962 (7th Cir. 1991). But those changes under the Civil Rights Restoration Act of 1987 expanded the scope of liability for the institution that receives federal funds, not the number of institutions that could be construed as indirectly receiving those funds. *See Doe v. City of Chicago*, 883 F. Supp. 1126, 1136 n.3 (N.D. Ill. 1994).

10

*Co.*, 990 F.2d 928, 933 (7th Cir. 1993), and that a cause of action like Vallera's accrues on the last day of her respective stays at each hospital, *Heard v. Sheahan*, 253 F.3d 316, 319 (7th Cir. 2001). *See also* St. Anthony Defs.' Br. at 12–13; Rush Oak Park Defs.' Mot. at 11. As relevant to this suit, Vallera was discharged from Rush Oak Park on May 28, 2022, and from St. Anthony on June 1, 2022. Second Am. Compl. ¶¶ 51, 105. Vallera timely filed her original complaint on May 28, 2024, but without a theory of liability under the Rehabilitation Act. *See generally* R. 1, Compl.

But this does not bar Vallera's theory under the Act. As she notes, a later-amended complaint that raises new theories can "relate[] back to the date of the original pleading" for limitations purposes if "the amendment asserts a claim or defense that arose out of the conduct … in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). The theory under the Rehabilitation Act is new, but it is based on the same factual occurrences as her original complaint and thus is timely under the relation-back doctrine.

### C. State Law Claims

Because at least some of Vallera's federal claims survive the Defendants' dismissal motions, the Court will exercise supplemental jurisdiction over Vallera's theories under state law. 28 U.S.C. § 1367. The Defendants argue that dismissal is proper of Vallera's claims for negligence per se and for negligent hiring and supervision. Rush Oak Park Defs.' Mot. at 11–12 (citing R. 43, Rush Oak Park Defs.' Prior Mot. at 7–10); St. Anthony Defs.' Br. at 13–15. The Rush Oak Park Defendants also contend that Vallera's theories of false imprisonment, intentional infliction of

emotional distress, and negligent infliction of emotional distress must be dismissed. Rush Oak Park Defs.' Mot. at 11–12 (citing Rush Oak Park Defs.' Prior Mot. at 10–15). The Court addresses each theory under state law.

First, Vallera fails to state a claim of negligence per se. Vallera specifically asserts that the Defendants violated the Illinois Mental Health and Developmental Disabilities Code, 405 ILCS 5/1-100 to /6-107. Second Am. Compl. ¶ 141. But a statutory violation constitutes negligence per se only if there is clear legislative intent "to impose strict liability." *Abbasi ex rel. Abbasi v. Paraskevoulakos*, 718 N.E.2d 181, 186 (Ill. 1999). Vallera identifies no such legislative intent, and the Court can identify none.

Vallera fails to state a plausible claim for negligent hiring too. She claims at most that the hospitals had certain duties before asserting that those duties were breached. Second Am. Compl. ¶¶ 156–63. But Vallera lacks key allegations: nowhere does she allege that either hospital knew or should have known that any specific employee was unfit or that either hospital knew of that unfitness at the time of hiring. *See Doe v. Coe*, 135 N.E.3d 1, 13–14 (Ill. 2019). Without those key allegations, she has no plausible claim for negligent hiring.

Vallera also advances a theory for negligent supervision, which is a cause of action that is distinct from negligent hiring. *Doe*, 135 N.E.3d at 15. The parties agree that, for Vallera to plausibly claim negligent supervision, she must allege that the hospitals breached a duty to supervise their employees and that the breach proximately caused her injuries. *Id.*; *see* Rush Oak Defs.' Prior Mot. at 9–10; St. Anthony

12

Defs.' Br. at 14–15. The St. Anthony Defendants do not appear to make any specific arguments about Vallera's negligent-supervision claim as opposed to the earlier theory of negligent hiring, St. Anthony Defs.' Br. at 14–15; St. Anthony Defs.' Reply at 13–15, and the Rush Oak Park Defendants seem only to challenge whether her allegations are sufficiently clear, Rush Oak Park Defs.' Prior Mot. at 9–10; Rush Oak Park Defs.' Reply at 14–15. The Court has explained why Vallera's allegations suffice to put the Defendants on notice of what conduct she alleges was unlawful (and thus the full scope of any potential supervision issues), *Vallera*, 2025 WL 2734473, at \*2, and because the Defendants are on sufficient notice of the claims, there is no separate pleading requirement that she specify which persons took what actions, *Jones v. City of Chicago*, 2024 WL 4753687, at \*1–2 (N.D. Ill. Nov. 12, 2024).[10]

The Rush Oak Park Defendants next contend that Vallera fails to state a claim for false imprisonment. Rush Oak Park Defs.' Prior Mot. at 10–11. In their view, Vallera does not allege that they "caused or procured" her subsequent restraint at St. Anthony. *Id.* at 11. But she does: Vallera alleges that Rush Oak Park sought to transfer, and successfully transferred, her to St. Anthony. Second Am. Compl. ¶¶ 45, 51. That is enough to plausibly claim that Rush Oak Park proximately caused Vallera's allegedly unreasonable restraint at St. Anthony. *Poris v. Lake Holiday Prop. Owners Ass'n*, 983 N.E.2d 993, 1007 (Ill. 2013). Although the Rush Oak Park Defendants also insist that they restrained Vallera under legal authority, Rush Oak Park Defs.' Reply

---

[10]Defendant Menezes also makes this argument generally as to Vallera's pleadings, Def. Menezes's Mot. at 3–4, but it fails for the same reason.

at 15–16, Vallera alleges an absence of that authority and thus can survive the dismissal stage, Second Am. Compl. ¶¶ 47–50. Similarly, what was reasonably foreseeable—the involuntary commitment or the sexual assault—is a question of fact that cannot be resolved at the pleading stage.

The Rush Oak Park Defendants also argue that their conduct was not extreme or outrageous and that Vallera thus cannot state a claim for intentional infliction of emotional distress. Rush Oak Park Defs.' Prior Mot. at 11–13. But as they acknowledge, whether conduct is extreme and outrageous turns on whether the actions were reasonable, which is a fact-bound inquiry. *Id.* at 12–13; *McGrath v. Fahey*, 520 N.E.2d 655, 658 (Ill. App. Ct. 1987). At the pleading stage, Vallera plausibly asserts that her involuntary sedation was non-consensual and that her transfer was unjustified, Second Am. Compl. ¶¶ 36, 41, which permits an inference that these actions were outrageous. Similarly, whether Vallera can prove that the Rush Oak Park Defendants recklessly disregarded a "probability of causing emotional distress," *McGrath*, 520 N.E.2d at 658, is also fact bound. For now, Vallera alleges enough to suggest that Rush Oak Park recklessly disregarded a probability that the involuntary confinement would cause her emotional distress. *See, e.g.*, Second Am. Compl. ¶ 20.

As a last substantive argument, the Rush Oak Park Defendants assert that Vallera fails to allege that she was physically impacted, as required to make a claim for negligent infliction of emotional distress. Rush Oak Park Defs.' Prior Mot. at 14. They are right on the rule. *See Schweihs v. Chase Home Fin., LLC*, 77 N.E.3d 50, 59–61 (Ill. 2016). But Vallera alleges several physical impacts and injuries: the

14

administration and injection of medicine, *see Mink v. Univ. of Chi.*, 460 F. Supp. 713, 718 (N.D. Ill. 1978), and her supposed head injury, Second Am. Compl. ¶¶ 26, 28–30, 32, 40–41. So this claim remains intact.

Finally, the Rush Oak Park Defendants attempt to invoke Illinois's procedural requirement that medical-malpractice suits attach an affidavit of merit. Rush Oak Park Defs.' Prior Mot. at 15; 735 ILCS 5/2-622(a). Not only is this not required at the pleading stage, *Young v. United States*, 942 F.3d 349, 351 (7th Cir. 2019), but it is not required at all in federal court, *Sereda v. Nw. Mem'l Hosp.*, 2026 WL 858754, at *1 (N.D. Ill. Mar. 27, 2026) (citing *Berk v. Choy*, 607 U.S. 187, 196–97, 199 (2026)).

## IV. Conclusion

The Court grants in part and denies in part the Defendants' motions to dismiss, R. 77; R. 78; R. 104. For the sake of precision, the following counts remain:

- Count 2 for damages under the Rehabilitation Act, as to St. Anthony Hospital, Dr. Majed Dalloul, Dr. Ralph Menezes, Tiffany L. Dean, Dr. Bikram Sharma, and Meredith Castaneda (collectively, the St. Anthony Defendants);

- Count 4 asserting negligent medical care, as to all individual Defendants;

- Count 5 asserting respondeat superior, as to Rush Oak Park Hospital and St. Anthony Hospital;

- Count 6 asserting negligent supervision, as to Rush Oak Park Hospital and St. Anthony Hospital;

- Count 7 asserting false imprisonment, as to all Defendants;

- Count 8 asserting battery, as to all Defendants;

- Count 9 asserting intentional infliction of emotional distress, as to all individual Defendants; and

15

- Count 10 asserting negligent infliction of emotional distress, as to all Defendants.

Vallera's remaining counts are dismissed. On or before August 19, 2026, Vallera may amend her pleadings if she can do so consistent with Civil Rule 11(b). Vallera may attempt to re-allege all of the dismissed claims except her theory of injunctive relief, which is dismissed without leave to amend.

In the meantime, the case will proceed on the remaining claims. The Defendants shall answer the Second Amended Complaint on or before August 26, 2026. Rule 26(a)(1) disclosures are due by August 19, 2026. The first round of written discovery requests must be issued no later September 2, 2026. Fact discovery (including with treating health-care providers) shall close on March 29, 2026. The Rule 16(b) deadline to add parties or to amend pleadings is November 22, 2026. No early summary judgment motion may be filed before the close of discovery without leave of Court.

ENTERED:

s/Edmond E. Chang

Honorable Edmond E. Chang
United States District Judge

DATE: August 7, 2026

16